INQUIRY COMMISSION, Movant,

v.

Alecia LOCOCO, Respondent.

No. 1999–SC–0473–KB.

Supreme Court of Kentucky.

Feb. 24, 2000.

As Amended March 6, 2000.

## OPINION AND ORDER

The Inquiry Commission, pursuant to SCR 3.165, petitioned this Court on May 12, 1999, to issue an order temporarily suspending Alecia Lococo of Hazard from the practice of law in Kentucky. It claimed that probable cause existed to believe that she misappropriated funds or improperly dealt with funds within the meaning of SCR 3.165(1)(a). The Commission further believed that Lococo's conduct poses a substantial threat of harm to her clients and to the public which requires appointing a trustee to assume immediate control of her bank accounts and enjoining all banks in the Commonwealth from making any further payment from her bank accounts, except as authorized by the trustee.

The Inquiry Commission also moved this Court on May 12, 1999, to issue an order requiring Lococo to show cause why she should not be held in contempt because of her failure to respond to either of the two subpoenas duces tecum served upon her in connection with disciplinary proceedings against her.

This Court entered a confidential order on May 17, 1999, giving Lococo twenty days to show cause why she should not be temporarily suspended for the reasons set forth in the petition. Lococo finally responded on July 7, 1999, when she filed a motion for an extension of time in which to file a response to the petition for temporary suspension and the motion for contempt. She claims that she was not aware that a complaint had been filed against her until she received notice from the Clerk of this Court that the petition and contempt motion had been filed. Lococo maintains that she called the KBA and learned for the first time that a complaint had been filed against her as well as the petition for suspension and the motion for contempt.

Thereafter, she contends that she received a letter from the KBA dated May 19, 1999, signed by Benjamin Cowgill, Jr., Chief Deputy Bar Counsel, which advised her as follows:

> After conferring with your secretary Donna [Ritchie], it is my understanding you were not aware of such proceedings. With the assurance of your cooperation, I will proceed to withdraw the Petition and Motion for Contempt filed with the Courts.

Lococo claims that she relied on the letter, which she attached as an exhibit to her motion, to signify that the petition and motion would be withdrawn and she would not be required to file a formal response with this Court. Further, she believed that the subpoenas were now moot because the case was returning to the initial stages.

After several alleged correspondences and alleged failed communications with the KBA, Lococo contends she contacted the Clerk of this Court on July 2, 1999, to ascertain whether the petition or motion had been withdrawn. She claims that only at this time did she learn that they had not been withdrawn, and in fact had been submitted to the Court for a ruling with her in default, and that a show cause hearing had been scheduled without her being given notice. Lococo stated that she had a meritorious defense to all matters and sought an order from this Court granting her an extension of time.

The Inquiry Commission responded to Lococo's motion by filing a verified memorandum in support of the motion for extension of time. In response, it set forth a detailed and very troubling allegation, supported in part by affidavits from Cowgill and two staff members, that the correspondences relied upon by Lococo were forgeries and that her chronology of the events were a falsehood. Further, it claimed that Lococo was on notice of the forged letters before she filed her motion but chose to rely on the forged documents nonetheless.

This Court remanded the matter to the Inquiry Commission for an evidentiary hearing on all questions raised by the petition for temporary suspension, motion for contempt and the response to the motion for extension of time. In particular, we remanded for issues presented in the verified memorandum in support of the response filed by the Commission, and to make findings of fact and a recommendation to the Court.

Thereafter, the Inquiry Commission filed an amended petition for temporary suspension, appointment of trustee and restriction on access to accounts. The amended petition set forth additional allegations in support of the relief requested in the original petition. Lococo responded answering the amended petition and demanded that both the original petition and amended petition be dismissed and held for naught.

Pursuant to this Court's order, the trial commissioner submitted a report to this Court on December 8, 1999. Following is a brief recitation of her report.

Lococo employed Ritchie as the secretary/receptionist and bookkeeper. Although she had no formal bookkeeping or paralegal training before joining the practice, Ritchie was provided with the checkbooks for the various bank accounts, including the client escrow account, and was authorized to use Lococo's signature stamp in order to write checks. From time to time, Lococo asked about the status of the various bank accounts, but otherwise gave Ritchie complete responsibility for all accounts except her personal account. Lococo claimed that she explained to Ritchie that an escrow account was to be used solely for client funds but was unaware that Ritchie was deficient in her understanding of this point.

During 1998, Ritchie began using Lococo's escrow account as a supplemental operating account for the office. According to Ritchie, she moved substantial sums of money in and out of the escrow account in

an attempt to "stay ahead" of the mounting debts of the law office without regard to funds received as settlement proceeds. Consequently, the escrow account ceased to be a separate account and overdrafts began appearing regularly.

Lococo denies knowledge of the mishandling of funds. However, in November 1998, she became personally aware that a settlement check to one of her clients had been returned for insufficient funds. On November 17, 1998, Lococo issued a check for $11,086.27 on the escrow account to Southwood, a client whom she represented in a personal injury case. Southwood endorsed the check in favor of a funeral home but when they attempted to deposit the check it was returned because of insufficient funds. After repeated attempts by the funeral home to contact Lococo were intercepted by Ritchie, the funeral director met with Lococo and informed her of the problem. Lococo directed Ritchie to pay the funeral home in full but their repeated attempts to receive payment were unsuccessful. Despite the problem, Lococo continued to rely on Ritchie to resolve the problem. Ritchie apparently advised Lococo that the funeral home had been paid in full and even showed her copies of two cashier checks as proof, one of which later proved to be a forgery.

Unable to collect his payment, the funeral director filed a bar complaint. Lococo's office was sent a certified letter containing the complaint from the KBA which another employee received and then gave to Ritchie to deliver to Lococo. Ritchie responded to a reminder letter from the KBA regarding the complaint by telling Cowgill that a response would be forthcoming. Lococo denies any knowledge of the matter claiming that Ritchie concealed it from her.

Unknown to Bar counsel, two subpoenas duces tecum which were to be personally served on Lococo as requested, were simply left at her office.

On May 17, 1999, this Court gave Lococo 20 days to show cause why she should not be temporarily suspended. Lococo claims that she did not receive the order because Ritchie concealed it from her. Earlier, on May 4, 1999, the Inquiry Commission filed a charge against Lococo which was apparently received by Ritchie who signed Lococo's name. Lococo denies any knowledge of the letter.

During the months of March, April and May, Ritchie called Cowgill and assured him that Lococo was working on her response to the complaint. When Cowgill asked to speak to Lococo, Ritchie told him that she was out of the office.

Lococo denies ever receiving the complaint and claims no knowledge of such until she received a certified mail receipt notice from the Clerk of Court which referred to the petition for temporary suspension. At that point she asked Ritchie to set up a telephone conference or meeting with Bar Counsel.

Thereafter, Ritchie told Lococo that she had spoken with Cowgill and showed her the forged letter indicating that the petition would be withdrawn. Based on this letter, Lococo took no further steps to respond to the petition for temporary suspension. On June 4, 1999, Ritchie faxed Cowgill an unsigned two page response to the Bar Complaint. When Cowgill called to complain of the deficient response, Ritchie told him that Lococo was out of the office and that she would pass the message along. Lococo denies ever receiving this message. Ritchie gave her a second letter purportedly prepared and faxed by Cowgill updating her on the current matter which also was a complete fabrication.

On June 30, 1999, the Chair of the Inquiry Commission signed an order reciting that the charge had been served on Lococo, that she failed to answer and that the case was ready for submission to the Board of Governors as a default case. On July 1, 1999, the Disciplinary Clerk filed the order of submission and issued a receipt notice to Cowgill and Lococo. The next day, for the first time, Lococo called

Bar Counsel regarding the case. She claimed that she did not respond to the petition for temporary suspension because of her reliance on the two prior letters which had promised to withdraw the petition. Cowgill informed her that the two letters never existed.

Since the time of the original petition, at least eight other cases spanning an eighteen-month period have been discovered in which client funds were mishandled. In October of 1998, after Lococo settled a claim for her client Campbell, Ritchie issued a check for partial payment of the settlement funds she was entitled to receive. Campbell attempted to cash the check but was informed that Lococo's escrow account did not contain sufficient funds for the check to be honored. As a result, Campbell did not receive her money until almost a month later, when the check was paid from settlement funds which Lococo had just received and deposited on behalf of another client, Southwood.

In August 1998, Lococo negotiated a settlement of a collection case against her client Carter, for $11,000. Carter then paid said sum to Lococo by cashiers' check and it was deposited in her escrow account. The money, however, was not paid to the claimant but was used to pay outstanding obligations in the escrow account. Carter was unable to learn of the status of her case because Ritchie continually put her off. The attorney for the claimant also made several calls and sent several letters seeking payment. When payment was not forthcoming, the attorney filed for summary judgment in circuit court. At the hearing on the matter, Lococo stated that she thought the case had previously been resolved. She then provided the attorney for the claimant with another cashiers' check to satisfy the claim. The check was a forgery and as of the date of the commissioner's hearing, the claimant was awaiting final clearance of another check it received from Lococo.

Sometime in 1998, Ritchie received a settlement check for $4,000 from an insurance company in connection with a claim Lococo had pursued on behalf of her client Neace. Ritchie deposited the check into the escrow account, but then permitted the funds to be used to honor other checks from the account. Later, Ritchie demanded that the insurance company issue another check claiming that the original check had never been received. The insurance company issued a replacement check and stopped payment on the original. Ritchie then deposited the replacement check into the escrow account three months after its receipt. This resulted in a charge against Lococo's escrow account for $4,000, which was paid from funds on deposit that belonged to other clients.

In February of 1998, another client, also named Campbell, retained Lococo to represent her in a personal injury claim. Campbell was advised that her contact person would be Ritchie, who would help her in submitting all medical forms. Campbell gave Ritchie prescription receipts to file in order to obtain reimbursement but the receipts were never submitted. Later, Ritchie contacted Campbell to tell her that the insurance company had offered to settle for $12,000 or $15,000. Campbell rejected the offer. A few months later, Ritchie informed Campbell that her case had been settled for $25,000, the maximum amount, and that she had to come to the office to sign a release form. When Campbell came to the office, she refused to sign the release because it appeared to her that the form had been altered.

Campbell eventually retained new counsel and was informed that the insurance company had issued a settlement check for $15,000. She denies ever receiving the check and claims her endorsement on the check is a forgery. Lococo denies any knowledge of wrongdoing and contends that her endorsement on the check is also a forgery.

In the spring of 1998, Lococo also settled certain claims on behalf of her client

Williams for $25,000. Later, a settlement check in the amount of $10,500 was received from the insurance company and deposited in the escrow account. Despite only receiving a partial payment, Ritchie wrote a check on the escrow account to Williams for $16,000 and to another attorney who assisted in the case for $4,166.67. This resulted in another client's funds being used to pay a portion of Williams' settlement proceeds and the other attorney's legal fees.

In early 1998, Lococo settled certain claims on behalf of her client Collins, for $25,000. Before receiving the settlement proceeds, Ritchie used the escrow account to make a partial payment to the client and to Lococo for her attorney fees. This resulted in charges against the escrow account which were paid from funds on deposit that belonged to other clients.

In March of 1998, Lococo settled certain claims on behalf of her clients, the Sandlins. In connection with the settlement, the Sandlins were asked to sign a release which contained a provision holding Lococo and her co-counsel harmless for any failure to assert claims on their behalf. Lococo denies having any knowledge of the language in the release and insists that it was prepared by Ritchie without her authority.

Later, Ritchie paid co-counsel his fee with a check from the escrow account before the settlement proceeds were deposited into the account. To date, the Sandlins have not been paid in full and the settlement, which involved a minor, had not been approved by the Court.

Ritchie told another client, Johns, that her case had been settled for $50,000. Ritchie provided her with a letter purportedly signed by Chris Porter, representative of the insurance company, confirming the settlement. Thereafter, Ritchie issued a check to Johns from the escrow account in the amount of $33,000 which was returned for insufficient funds. When confronted, Ritchie gave Johns a purported fax from the insurance company indicating that they had agreed to increase their settlement to $60,000.

When the client contacted the insurance company herself, she was told that they did not have an employee by the name of Chris Porter and that no settlement had been reached regarding her claim. Lococo claimed that she never authorized any settlement on behalf of Johns and was not aware of the check issued to her in the amount of $33,000.

Since the institution of this proceeding, Lococo's investigation of her files reveals cases containing releases which her clients have executed, for which the clients have received settlement monies, but for which no actual settlement has occurred. Lococo testified that in other instances, Ritchie apparently advised individuals that she would represent them in a particular matter but would not advise her of this fact. Lococo admits that she failed to oversee the management of her escrow account and failed to supervise Ritchie's handling of client funds which could have prevented the illegal activity. She has since terminated Ritchie's employment and has instituted certain corrective measures in the management of her practice.

The Trial Commissioner noted that even though lawyers may employ non-lawyers to assist in fulfilling their fiduciary duties with regards to client funds, lawyers must provide adequate training and oversight to ensure that employees act in full compliance with the ethical and legal obligations required when dealing with said funds. *See* SCR 3.130(5.1). Although the Trial Commissioner found that Lococo's conduct does not give rise to the level of knowing misappropriation, she determined that probable cause existed to believe that Lococo was grossly negligent in her perpetuation of an inadequate accounting system that led to negative balances in her escrow account and other bank accounts. Thus, given the nature and number of incidents involved, the trial commissioner concluded that probable cause exists to believe that

Lococo has misappropriated funds held for others to her own use, or has otherwise improperly dealt with funds held for others within the meaning and contemplation of SCR 3.165(1)(A).

Moreover, given the nature and number of incidents in which clients suffered actual losses, the trial commissioner determined that probable cause exists to believe that Lococo's conduct poses a substantial threat of harm to her clients and the public at large within the meaning and contemplation of SCR 3.165(1)(B). Noting that Lococo had not retained an accountant to reconcile her bank accounts, the trial commissioner also concluded that probable cause exists to believe that it is necessary to appoint a trustee to assume immediate control over Lococo's bank accounts, and to enjoin the bank from making any payment from respondent's accounts except as authorized by the trustee, pursuant to SCR 3.165(2).

Finally, the Trial Commissioner found that there was absolutely no evidence presented that Lococo participated in or had prior knowledge of the fabrication of the forged documents. Thus, she concludes that probable cause does not exist to believe that Lococo's use and reliance on the forged documents poses a substantial threat of harm to her clients and the public.

We agree with the findings of the Trial Commissioner and, therefore, ORDER:

1) that Alecia Lococo of Hazard, Kentucky is temporarily suspended from the practice of law in this Commonwealth, effective immediately upon entry of this order and until superseded by subsequent order.

2) Disciplinary proceedings against Lococo shall be acted upon by the Inquiry Commission pursuant to SCR 3.160.

3) Pursuant to SCR 3.165, Lococo shall, within twenty days from the date of the entry of this order, notify all clients in writing of her inability to continue to represent them and shall furnish copies of all such letters of notice to the Director of the Kentucky Bar Association. Further, Lococo shall immediately, to the extent possible, cancel and cease any advertising activities in which she is engaged. Failure to comply with this rule shall subject Lococo to a charge of contempt of court.

4) This order shall be served upon any and all banks maintaining any account upon which Lococo may make withdrawals. Pursuant to SCR 3.165(2), this order shall serve as an injunction to prevent said bank(s) from making further payment from such accounts except in accordance with this order or future orders issued by this Court.

5) Any fees tendered Lococo after the entry of this order shall be deposited in a trust fund from which withdrawals may be made only in accordance with the terms of this or future orders issued by this Court.

6) Honorable William G. Francis, Post Office Box 268, Prestonsburg, KY 41653, is hereby appointed trustee and shall be the sole person authorized to make withdrawals from the bank(s) referred to in this order. The trustee is hereby granted the full power to act in accordance with SCR 3.165(2). The Court may require the trustee to render an accounting of said funds to the court and to furnish a copy of the accounting to the Director. The trustee shall receive reasonable compensation for his or her services.

7) Each person or entity upon whom this order is served shall fully comply with the provisions of SCR 3.165(2), a copy of which shall be affixed to this order;

8) Lococo shall cooperate with the trustee to the extent necessary to fulfill the purpose of this order.

9) Lococo shall be responsible for all costs arising out of this proceeding.

All concur.

ENTERED: February 24, 2000.

/s/ Joseph E. Lambert
Chief Justice