**KENTUCKY BAR ASSOCIATION,**
**Movant,**

v.

**Alecia LOCOCO, Respondent.**

**No. 2001–SC–0022–KB.**

Supreme Court of Kentucky.

Sept. 27, 2001.

## OPINION AND ORDER

Effective February 24, 2000, Respondent, Alecia Lococo, was temporarily suspended from the practice of law by this Court pursuant to SCR 3.165. *Inquiry Com'n v. Lococo*, Ky., 18 S.W.3d 341

(2000). Subsequently, Respondent was found guilty by the Kentucky Bar Association Board of Governors of five counts of professional misconduct arising from two separate incidents. The Board of Governors recommended a three-year suspension and assessed Respondent the costs of the action. We adopt the recommendation of the KBA Board of Governors.

## FACTS

Two bar complaints were filed against the Respondent in 1999. The first was filed by William Tackett in January of 1999. The complaint was investigated by the Office of Bar Counsel and the Inquiry Commission issued a Charge in April of 1999. This Charge was labeled KBA file 7175. The second complaint was filed by Nellie Combs, one of Respondent's clients, in October of 1999. Again, the complaint was investigated and a second Charge was filed in December of 1999. This Charge was labeled KBA file 7664. The two KBA files were consolidated and tried as a single disciplinary case in May of 2000.

### KBA File 7175

This Charge contained two counts concerning the alleged mismanagement of Respondent's escrow account and the alleged mishandling of a client's settlement funds. On or about October 15, 1998, Virginia Southwood, Respondent's client, settled her personal injury case for $17,500. The settlement check was transmitted to Respondent on October 23, 1998, and was deposited into Respondent's escrow account. However, because of pre-existing problems with the escrow account, the Southwood settlement funds were delivered to "cover" an escrow check previously issued to another client. A week or two later, Respondent authorized her secretary to issue a check on the escrow account payable to Ms. Southwood in the

amount of $11,086.27, as payment of the net proceeds of the settlement that Ms. Southwood was entitled to receive. Ms. Southwood, unaware it was a cold check, endorsed the check from Respondent's escrow account and transferred it to Engle Funeral Home as payment of a $1,242.09 debt owed by Ms. Southwood to the funeral home. The manager of the funeral home, William Tackett, accepted the check and gave Ms. Southwood a funeral home check in the amount of $9,844.18, which represented the difference between Ms. Southwood's outstanding debt and the check she endorsed over to him. When Respondent's escrow check was presented for payment by the funeral home, it was returned due to insufficient funds. Mr. Tackett went to Respondent's office in December of 1998, demanding that his loss be cured. Respondent did not immediately pay the funeral home and Mr. Tackett filed his bar complaint in January 1999. Engle Funeral Home was not made whole by Respondent until approximately nine months later, in August 1999, as a result of this disciplinary proceeding.

### KBA File 7664

This Charge contained three counts concerning incompetent, non-diligent representation of a client, and general office mismanagement arising from Respondent's failure to file Ms. Combs' lawsuit within the appropriate statute of limitations. In December of 1998, Ms. Nellie Combs employed Respondent to represent her on a personal injury claim arising out of an automobile accident. Respondent did not file Ms. Combs' claim before April 20, 1999, the date that the statute of limitations expired on the claim. Respondent did not realize that a lawsuit had not been filed until August 1999, about four months after the statute of limitations expired. Respondent only became aware of the problem as a result of investigative activi-

ties by the KBA Office of Bar Counsel in connection with KBA file 7175. As a result, Ms. Combs obtained new counsel and filed her bar complaint in October of 1999.

## BOARD OF GOVERNORS' DECISION

In January of 2001, the KBA Board of Governors rendered its decision concerning Respondent's case. The Board agreed with the Trial Commissioner's findings in all relevant respects.

### KBA File 7175

The Trial Commissioner concluded, and the Board of Governors unanimously agreed, that Respondent was guilty of an egregious violation of Rule 1.15 as alleged in Count I of the Charge in KBA file 7175 in that:

(a) the Respondent caused or permitted the Southwood settlement funds to be converted to the Respondent's own use as a source of money to satisfy the Respondent's prior obligations to other clients, in violation of her duties under Rule 1.15(a), (b) and (c) [SCR 3.130–1.15(a)–(c) ];

(b) by issuing a cold check to Virginia Southwood, the Respondent also failed to promptly deliver the settlement proceeds in violation of her duties under Rule 1.15(b).

The Trial Commissioner and Board of Governors also concluded that Respondent was guilty of violating that portion of Rule 8.3(c) involving "misrepresentation," as alleged in Count II of the Charge in KBA file 7175.

### KBA File 7664

The Trial Commissioner concluded, and the Board of Governors unanimously agreed, that Respondent was guilty of professional misconduct as charged in Counts I, II, and III of KBA file 7664, in that:

(a) the Respondent failed to provide Nellie Combs with competent representation, in violation of her duty under Rule 1.1 [SCR 3.130–1.1];

(b) the Respondent also failed to act with reasonable diligence in her representation of Ms. Combs, in violation of her duty under Rule 1.3 [SCR 3.130–1.3];

(c) the Respondent also failed to make reasonable efforts to ensure that the conduct of her employee, Donna Ritchie, was compatible with her own professional obligations to her client, in violation of her duty under Rule 5.3 [SCR 3.130–5.3].

### Recommended Sanction

The Trial Commissioner recommended the severe sanction of a three-(3) year suspension based on the Rules violations themselves and on the following non-exhaustive list of aggravating circumstances:

(a) Respondent's completely unreasonable abdication of her professional obligations to a non-lawyer employee;

(b) The nature of the misconduct was especially detrimental to public confidence in the legal profession;

(c) Respondent's testimony and demeanor at the hearing indicated that she fails to appreciate her own central role in the matter. She continues to assert that she is a "victim" of misconduct on the part of her employee.

The Board of Governors, in an 18 to 2 vote, agreed with the Trial Commissioner's recommended sanction and voiced particular concern over Respondent's continued attempts to thrust the "blame" onto her secretary.

## MISREPRESENTATION UNDER RULE 8.3(C)

■ Respondent argues that it defies logic to conclude that she committed an act of misrepresentation. Respondent contends that it is a "basic principle of logic that in order to misrepresent something, one must first know the truth," and that at the time Respondent authorized that the escrow account check be written to Ms. Southwood, Respondent had no actual knowledge that there was a deficit in the escrow account. Therefore, without knowing the "truth" about the status of the escrow account, Respondent could not have committed an act of misrepresentation. Respondent cites no case law in support of her argument against the finding of misrepresentation.

■ Notwithstanding Respondent's argument, we agree with Movant that the law, not to mention logic, allows us to conclude that Respondent committed an act of misrepresentation under Rule 8.3(c). First, to find that an act constituted "misrepresentation," the law does not necessarily require that the actor possess actual knowledge. Movant relies on KRS 514.040(4) and contends that the statute is applicable to the present case. KRS 514.040(4) states that actual knowledge of insufficient funds is presumed if the maker of the check fails to make the check good within ten days after receiving notice that the check was refused by the bank. In this case, Respondent admits: (1) that she authorized the escrow check to be issued to Ms. Southwick; (2) that she became aware that the check had bounced when she was visited by William Tackett; and (3) that she did not make Engle Funeral Home whole until many months later. Therefore, under KRS 514.040(4), a presumption arises that she was aware of the lack of funds in the escrow account at the time she authorized the issuance of the cold check.

While KRS 514.040(4) is part of the Kentucky Penal Code and, as such, was not intended to apply to non-criminal cases such as the present one, we believe the statute is highly illustrative of Movant's point that—contrary to Respondent's argument—actual knowledge is not an absolute prerequisite to finding misrepresentation. In fact, as KRS 514.040(4) (titled "Theft by deception") shows, even in the criminal context—where penalties can be significantly more severe than suspension of one's legal license—the law will presume actual knowledge in fact situations identical to Respondent's. It appears from the facts of the present case that Respondent could be found guilty of theft by deception under KRS 514.040. Thus, it would be unreasonable for us to find that, under the very same facts, Respondent could not be guilty of an act of misrepresentation under Rule 8.3(c).

## EXCESSIVENESS OF PENALTY

■ Respondent argues that a three-year suspension is an excessive sanction for her misconduct. Respondent points the Court to a series of cases that impose lesser penalties for similar misconduct. In particular, Respondent urges that her suspension should be more in keeping with the decision in *Knuckles v. Kentucky Bar Ass'n*, Ky., 997 S.W.2d 460 (1999). In that case, which Respondent describes as "strikingly similar," we imposed a ninety-day suspension for violation of SCR 3.130–5.3 and SCR 3.130–1.15. In *Knuckles*, the attorney admitted that she failed to supervise a secretary's handling of a settlement check and failed to ensure that funds belonging to the client were properly managed within an escrow account.

While the facts of the *Knuckles* case and the present case are similar, there are

some notable differences. First, the attorney in *Knuckles* conceded that she was guilty of unethical conduct from the outset of the disciplinary proceedings. By contrast, Respondent in the present case initially argued that she was guilty of no professional misconduct or wrongdoing whatsoever. Rather, Respondent blamed her secretary for the problems with the escrow account and for the failure to timely file a client's complaint. Only after the findings of the Trial Commissioner were issued, did Respondent concede that she was guilty of professional misconduct.

Secondly, the *Knuckles* case indicates that, upon learning of the issuance of the bad checks, the attorney immediately rectified the situations so that there was negligible financial harm suffered by the complainants. In the present case, nine months elapsed between the issuance of the bad check and the funeral home finally receiving the more than $11,000.00 it was owed.

Lastly, the *Knuckles* case did not contain—as does the present case—the separate finding of misconduct arising from failure to file a claim within the applicable statute of limitations.

Moreover, Movant volunteers in its brief several other disciplinary cases which would indicate that the three-year suspension is consistent with penalties handed down in other, similar cases. Having considered the case law cited by both Respondent and Movant, we conclude that a three-year suspension is not excessive based on the facts of this case.

For the reasons stated above, we adopt the Board of Governors' recommendation and it is Ordered that:

1. The motion of the Respondent for oral argument is hereby denied.

2. Respondent, Alecia Lococo, shall be suspended from the practice of law in this Commonwealth for a period of three (3) years, commencing March 6, 2000, the effective date of her temporary suspension by Opinion and Order of this Court. The suspension shall continue until such time as she is reinstated to the practice of law by order of this Court pursuant to SCR 3.510.

3. In accordance with SCR 3.450, Respondent is directed to pay all costs associated with the disciplinary proceedings against her, said sum being $2,541.72, and for which execution may issue from this Court upon finality of this Opinion and Order.

4. Pursuant to SCR 3.390, Respondent shall within ten (10) days of the entry of this order notify all clients of her inability to represent them and furnish copies of said letters of notice to the Director of the Kentucky Bar Association. She shall also provide such notification to all courts in which she has matters pending.

5. In accordance with SCR 3.390, Respondent shall immediately disburse all funds held for clients and third persons in her escrow account and shall provide proof of said disbursements to the Director of the Kentucky Bar Association.

COOPER, GRAVES, JOHNSTONE, STUMBO, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents, and would impose a two-year suspension.

KELLER, J., dissents as to Charge 7175 and would remand to the Board of Governors to determine whether Respondent had knowledge of the theft of the escrow funds and reconsideration of the sanctions recommended if the Board finds that the Respondent did not have such knowledge.

Entered: September 27, 2001.

/s/ Joseph E. Lambert

Chief Justice